et al. Mr. Black for the appellate, Mr. Jed for amicus curiae, and Mr. Wick for the appellees. Good morning, Your Honor. Good morning. May it please the Court, I am Joseph Black. I represent the relator in this false claims action. I am here to speak on behalf of the  JPMorgan Chase Bank. I reserve two minutes of my time for rebuttal. The District Court in this case made a clear error when it dismissed the case because the relator failed to exhaust pre-litigation remedies contained in a contract to which he was not a party. The District Court in this case made a clear error when it dismissed the case because the relator failed to exhaust pre-litigation remedies contained in a contract to which he was not a party. The District Court in this case made a clear error when it dismissed the case because the relator failed to exhaust pre-litigation remedies contained in a contract to which he was not a party.  the relator failed to exhaust pre-litigation remedies contained in a contract to which he was not a party. So your case is basically a collateral attack on the notion that Chase violated the consent decree. Well, I don't know how you define collateral. We have filed a false claim. No, no, it's a fair point. Let me go to the penalty question. You said the penalty is not fixed, but it's an obligation because you look at E of the exhibit. That's correct. Do you disagree with what Chase described in its brief as the number of contingencies that have to take place before any penalty is imposed? Those contingencies only apply to a portion of our case. We have a servicing part of the claim that the monitor would take. The crediting penalties, if you will, are described as obligations in the consent judgment itself. Tell me about how the crediting penalties would apply. What are the steps that have to take place? Well, Chase submitted... No counsel for the penalties. The crediting penalties, how do they take place? Chase claimed that it provided... No, no. You're going to the merits. I'm just asking how are the penalties imposed? What is the steps that have to be taken? The steps that have to be taken would be that Chase failed to provide the credits following... Who imposes the penalty? There's no provision within the consent judgment for Chase for the imposition of those penalties. It has to be a finding of some kind by somebody that Chase did not follow the procedures of the consent judgment to take those credits. Wait a minute, counsel. I'm confused. Who imposes the penalty? It has to be the court, right? It would have to be the court, yes. And it's totally discretionary on the part of the court, right? No. Why? Because, well, it would be a finding that Chase did not... But like any penalty, well, like most penalties, it's totally discretionary on the part of the district judge, right? The district judge could say that equitable relief is adequate, right? Not for these provisions. Why? As I recall in Exhibit 3, the equitable provisions apply to the servicing standards. But why would the district judge... You just pointed out, it's total discretion on the district judge. It's not... It's only... You know, a district judge has discretion to impose, to make a number of decisions because he or she is a district court judge. But the obligations are clearly defined in the consent judgment, and those have to be imposed. The obligations are what? The obligations are to collect at least a minimum of 120% of the accrediting that Chase did not give or grant following the requirements of the consent judgment. But those aren't obligations that qualify as statutory obligations for the False Claims Act purposes under our Hoyt case or under the Third Circuit and Fifth Circuit decisions. Well, yes, but they're obligations under contract. True, but our Hoyt case suggested that that kind of obligation is not itself good enough to qualify. Your Honor, I believe there are numerous cases that say that contract obligations are obligations under the Reverse False Claims Act. There's no case. Is there any case where it provides that a penalty is an obligation, a potential penalty is an obligation? You know, it's a question of how you describe a penalty. The requirements, the accrediting provision payments that are described as payments, they're not described as penalties. And it is required that Chase make payments to the government  if it fails to provide the correct accrediting following the correct procedures. Did you see the 28-J letter that the government filed just a day or so ago? Yes. Did that not defenestrate you? No. Specifically disavowed your penalty theory? What it said was that we did in fact... No, it did not. It did not. The penalty provisions are within, related to servicing, have two components. One of those is for penalties imposed for failure to meet the, excuse me, meet the servicing criteria. And the other, there is no credit... What was the other? Just finish, please. I'm trying to sort these out. I'm confused about which is which and where the penalties flow from. So could you just finish? I'm sorry. Your Honor, there are factors in which the monitor looked at to determine whether or not Chase was compliant with the servicing requirements. If Chase failed to meet those requirements, the monitor could impose penalties. There were other servicing factors that were similar, but they were not monitored by a... And what about the consumer relief obligations? The consumer relief obligation, the monitor only accepted Chase's word that it had given accrediting following the requirements of the... Incidentally, going to the merits there, what did you think was wrong with what Chase did? Well, they just didn't follow those requirements. They did not... Specifically, specifically. They were first required to determine whether or not the house was occupied. They didn't do that properly. They were required to... Are you talking about the valueless loans? Yes, primarily. These were the loans that were... Were written off as valueless, right? That's right. What is it you thought Chase did not do that they were obliged to do? Chase didn't have the ability to... Counsel, just answer the question. What did Chase not do that they were obliged to do? They didn't follow the requirements of its... Specifically, please, don't talk generally. What specifically are you... Well, they didn't make any inquiries... They didn't... They didn't ask any questions of the borrower to determine whether or not the borrower qualified for the credit. But if it's a valueless loan and they cross it off? Well, that may be, but the loan had to qualify for credit. Now, the monitor did not... This was perfectly disclosed to the monitor, right? No. It was not? No. Explain why. Well, Chase maintains that the RBC loans were... And the practices were described to the monitor. But we know now that the earliest that they... That Chase explained this may have been in October of 2013. Over... Oh, what? 18 months after the case... After the consent judgment was in place and after the Chase made a number of false certifications of compliance? And the email that Chase identifies, they tried to insert into the record in January, indicates that it may have only been at that time that the monitor was fully aware of the RBC1 loan. And we learned... And we tried to supplement the record with additional information. We know that the monitor never knew that the RBC1 loans were not serviced. Servicing is a requirement for modification. And Chase was incapable of modifying the RBC1 loans. Why would you modify a loan you're writing on? Well, there was a requirement of the consent judgment. But if they write... Well, wasn't it perfectly known to the monitor that Chase, if it wrote off the loan, wasn't doing anything further? No, the monitor was not aware of that. And that's what you think is the false claim? Well, that's part of the false claim. I mean, there were a number of false claims involved, but... Can I... Yes. Can I go back to the law and the contingent penalties? I read the case law, our case in Hoyt and other circuits post-2009, to say a contingent exposure to penalty liability does not constitute an obligation under the False Claims Act. Why is that wrong? I believe that's... You know, I believe the 2009 amendments to the False Claims Act say that the obligation needs to be fixed. There's a difference between fixed and contingent. In other words, Congress said you don't have to have a fixed liability, but Congress never said you can get a false claim based on a contingent liability. Well, if this is not a properly reversed False Claims Act case, I don't know what is. Would there ever be a properly reversed False Claims Act case if this is not one of them? The Third and Fifth Circuits, though, looked at this, looked at the legislative history in detail of the 2009 amendments, and talked about Senator Kyle's amendment to those proposals and said it was supposed to cover situations where the amount wasn't necessarily fixed, but it wasn't supposed to loop in or swoop in to cover contingent obligations. Well, this is not a contingent obligation. It's specified in the contract how much... Contingent penalties, contingent penalties, I should have said. And again, these are described as payments, not penalties. I'm talking about the crediting... They're contingent penalties for violation of some standards set forth in the agreement, right? I mean, they're payments for some violation or some failure to live up to some standards set forth. The contingency is Chase's failure to comply with the requirements. Right. It's not contingent on somebody else making the decision. Counsel, where do you see a dollar amount that is a set penalty? I believe it's in... Exhibit A, E? It's in E, and it's C of that section. Looks to me like the district judge would have authority to set equitable relief. I believe, Your Honor, that that applies to the first requirement related to... So there's no provision whatsoever for a specific penalty for the crediting, right? There is. What? It's... What? It's the value of the credit that they took plus 120%, times 120%. Wait, is that required? As I read this requirement, as I read the consent judgment, it is. I didn't see that. Excuse me, Your Honor, if I...  Excuse me. I'm sorry. May I... May I ask you another question while I... Perhaps you can find it while you're... Before you come back on the button. What about the hand? It was dismissed without prejudice, right? That's correct. Why didn't you just amend your complaint? We would have amended our complaint, but the court told us that we could file an immediate appeal. No, but you haven't answered my question. Why didn't you just amend the complaint? Is it because you couldn't find a material violation? Well, no, we could. As a matter of fact, we identified the fact that our complaint... Suppose we concluded your complaint was inadequate as a matter of prejudice. Suppose we concluded that, as a matter of law, your complaint was inadequate. We could... If we were permitted to amend, we could add facts that would demonstrate that, indeed, Chase was violating the hand. Chase argues, of course, that under no circumstances it was material, because you haven't alleged that any of the consumers, the mortgagors, would have been injured. It wasn't. It was the agreement with the government. The government in the United States would be injured. It's not so much... Why? Because this was a program intended to stimulate the economy. If nobody was hurt, why would there be a material... The economy... The government and the economy as a whole would have been hurt, because it was part of a stimulus package. That was, as the government said in other times, that it was... Yeah, but the purpose was to help homeowners. It was to help homeowners to become creditworthy again and to start spending money. It was as part of a stimulus package. I mean, you know, the credit problems, the recession was a balance sheet recession, because people's individual balance sheets were so far down they stopped spending money. The design was to get people safe in their house and start spending money again. So to help stimulate the economy was a small effort. It was part of a much larger package. I do. One more question. I'm still stuck on the case law. You know, the Fifth Circuit, for example, said that the overwhelming weight of authority before the 2009 Act held that contingent penalties are not obligations under the FCA. And then it looks at all the legislative history and concludes that the new legislation confirmed the accepted holding that contingent penalties are not obligations under the FCA, which also is what our Hoyt case had held. And you disagree with that. I disagree with that. I believe that the Hoyt case was based on the ATIM case, and the ATIM case was specifically rejected by the Senate report. Okay. Thank you. Counsel, the 20HA letter does seem to indicate that the government has changed its view with respect to the penalty, and the view expressed by both my colleague, Judge Kavanaugh, and me. Well, what the letter says is that Yes, but the judge says that this issue is immaterial to the issues. I said this. Sorry. The letter also says that this issue is immaterial to the issues before this Court, and it also points out that there was, in fact, noncompliance, and that it was addressed. But Judge Kavanaugh and I have been focusing on the penalty question, and it looks as if the government has disavowed your position with respect to penalties. With respect to the penalties that we're talking about are the servicing penalties. No, the government is broader than that, isn't it? No, I don't believe it is. It's very narrow, actually. It only refers to the servicing penalties that are due to failure to meet certain metrics. And the other penalties are strictly up in the air, up to the district judge, right? To the extent the district judge would have to impose them. Total discretion. That discretion is circumscribed by the consent judgment. Are you okay? Yeah. All right. Thank you. We'll hear from the government. Yeah. Good morning, Your Honors. Adam Jett for the United States. The United States is participating on a narrow legal question, the correct interpretation of the National Mortgage Judgment's exhaustion provision, which concerns enforcement actions under the consent judgment. As the Court is aware, we are not taking a position on any of the other legal issues that are before the panel today, but we are concerned that the district court's interpretation of that specific exhaustion provision was mistaken, and we're here to ensure that there's not spillover as to either another case that may concern this specific consent judgment. What about the 28J letter with respect to penalties? Judge Silverman, you know, I apologize if we were unclear on the 28J letter. We were clarifying our factual position that, of course, the United States has not intervened in this case. We're not a party to this case. But we were clarifying the factual position that, based on the information currently available to them. No, what about the last paragraph about penalties? Your Honor, what we were saying in the last paragraph was a factual point. It was not the legal obligation question that I understand, Chase, to have raised as an alternate ground for affirmance. And if I understood correctly, Judge Silverman, it sounded like you and Judge Kavanaugh were both asking my friend about that legal question. We have not taken a position on that. All that we were doing was simply clarifying our earlier representation, which is that, again, based on the facts currently available to them, that doesn't mean that they have fully investigated all that could exist. But based on the facts currently available to them, we're informed by the relevant entities who monitor these things. So you're taking no position on the question of whether or not a contingent penalty is an obligation under the Flawless Claims Act? The answer is yes. But let me just sort of put a footnote on that answer, which is certainly for the purposes of this case, we have not taken a position on that. That was not an issue addressed by the district court. In fact, when we filed our brief, it was not an issue that had been addressed by any brief in this case. And, of course, as Your Honor is aware, you know, it's the ordinary practice of this court not to address an alternate ground that was not addressed below, especially where it's essentially just being raised in one principle brief and one reply brief. What I will say is if you're not – We've done that. We do that sometimes. It happens sometimes. I by no means mean to suggest that that's universal. It's certainly an unusual practice, especially when it's something like a question of first impression, which it would be for this court. Is it really a question of first impression? I guess the question – Hoyt resolved the question. The question is whether the 2009 Act changes that, which other courts have said no to that. Yeah, I mean, insofar as we're not participating on that question, I don't want to get pulled too far into that other than to say, obviously, Hoyt did predate the 2009 amendments. If the court were interested in addressing that legal question and were interested in the government's position, Judge Kavanaugh, in the Siminoe and the Victaulic decisions that you cited, the United States did file, I believe, they were amicus briefs in both cases. Obviously, those lay out the government's general position about what constitutes an obligation and, of course, does not get into what may be some of the slightly distinct questions about how to understand what would be an obligation in connection with this consent judgment. But if the court were interested in our position, we would certainly invite the court to read our briefs in those cases. And, you know, as I said, it's unusual for the court to address these kinds of legal questions without full briefing when they weren't passed on below. But potentially, if the court were interested, it could also invite the views of the United States and we could consult with the Solicitor General on whether the government would be interested in filing a further supplemental amicus brief. Unless the court is interested in discussing a question that the government did participate on. Do you have any questions? No. Okay, no. Thank you. Thank you. Thank you for your brief. Yeah. Okay. May I please the court? I'm Robert Wick for the Chase defendants. And if it's acceptable to the court, I'll begin where Judge Silberman began with the question of whether the action below is a collateral attack on the monitor's determinations that Chase complied with all of its settlement obligations. Judge Silberman is correct, and opposing counsel ultimately conceded that the indispensable property of the case at the heart of the complaint is that Chase violated the consent judgment. If Chase didn't violate the consent judgment, then it made no false claim of compliance and there is no false statement that could serve as the basis for False Claims Act liability. And the trouble with the core allegation that Chase didn't comply with its settlement obligations is that the monitor duly determined that Chase did comply with its settlement obligations. And for the terms of the settlement, that determination decides the question of whether Chase did or did not comply with its settlement obligations. How do we know that? We know that because the settlement says so. In Exhibit E of the... Well, any of the parties could have challenged the monitor's determination. Correct. There was a process available within the consent judgment action for petitioning Judge Collier to set aside the findings of the monitor. That process wasn't followed. And to file a brand new action from outside the consent judgment proceeding to collaterally attack that determination, there's no provision for that. That would be a violation of the terms of the contract. The terms of the settlement would say that the monitor decides the question of whether Chase complied. It would also be a violation of the principles of finality. Unless a False Claims Act is not an action under the settlement, right? That's the government's position. But that seems to me to reinforce the fact that it would be a collateral attack on the monitor's determination. The government says... Isn't the allegation that the monitor's determination rested on fraudulent submissions by the bank? There is a suggestion in... That's what they allege. It's a False Claims Act case. There is a suggestion in the Schneider brief that why should we defer to the monitor's determinations because the monitor's determinations were procured by fraud on the monitor. If there were a well-plaid allegation of fraud on the monitor here, the right procedure would be to make an application to the monitor to reopen his determinations on grounds of fraud. Let's see if a False Claims Act is a case under the settlement. I beg your... But not if it doesn't qualify as a... as a... as a... that it's not brought under the settlement. There are two different questions here, Your Honor. The first question is does the government have to go or Schneider have to go through the pre-litigation process? That question turns on whether this action is or is not an attempt to enforce... I'm sorry, enforcement action under the decree. That's the language, right? The government's position is this is not a, quote, enforcement action under the decree. Right. And I have... and I am arguing an entirely separate point now, Your Honor, the one that Judge Silverman started with. Whether or not the False Claims Act action is an attempt to enforce Chase's settlement obligations, the fact remains there was a fact-finding process set up under the settlement for determining whether Chase complied. Right. But the allegation is that that fact-finding was based on fraud. Right. And if there were a well-plaid allegation that the monitor's determination had been procured by fraud, the right remedy would be to apply to the monitor to reopen his finding on grounds of fraud. Why can't you do both? Sorry. Go ahead. Because doing anything but following the procedure set out in the settlement would be a violation  It would be a violation of the principles of the settlement. But he's not bound by the settlement. He's not a party to the settlement. Well, he stands in the shoes of the United States. He makes the False Claims Act case. Right. And the Supreme Court said in the Stevens case that a relator sues as an assignee and an agent of the United States. And as an assignee and agent of the United States, he can have no greater right to litigate this case than the United States would have if the United States were litigating the case on his own behalf. As to the question of fraud, I don't think I've gotten this answer out there yet, Your Honor. If Schneider were saying that Chase had procured a district court judgment by defrauding the district court, it wouldn't be open to him to file a brand-new district court case and ask the court in the second action to overturn the judge in the first action on grounds of fraud. He would have to make a Rule 60B application to the judge in the original action to reopen the judgment on grounds of fraud. Same thing here. You don't set aside the monitor's determinations on grounds of fraud by bringing a brand-new separate collateral action. You go to the monitor. You ask the monitor, Were you defrauding? If that happened here, we're confident the monitor would say, That's all nonsense. I wasn't defrauding. So the settlement agreement bars all false claims act claims implicitly, correct? That's not our position, Your Honor. Okay. What is your position? Well, we have two different positions. One is that Schneider cannot use a separate proceeding to collaterally attack the determination made in the consent judgment proceeding. So that sounds to me like your answer to Judge Kavanaugh should be yes. It does bar all false claims act cases. It doesn't. Of course. Give us a hypothetical of a false claims act case. Wouldn't people? Yes. If the monitor duly determines that Chase has complied, then it would not be open to a false claims act relater to collaterally attack that determination in a separate action. But if the monitor had found that Chase didn't comply, then you would be free to bring a false claims act case. Then you're saying there cannot be a false claims act if the monitor concludes that Chase complied. If the basis of the false claims act. Did you hear what I said? You're saying there cannot be a false claims act if the monitor concludes that Chase complied. Yes. If the basis of the false claim is a claim of noncompliance. We don't have to go that far to sustain your position in this case. Correct. If the basis of. Well, why don't you think about what could be a false claim that would be independent of the consent decree. If the false claims act proceeding weren't. If the sole basis of the false claim weren't a false claim of compliance. Yes, that's the question. Then he would be able to bring some sort of a false claim back. The only false claim alleged here is a false claim of compliance. The monitor gets to decide the question of compliance. What other claim would there be? I mean, I don't understand. The monitor is in charge of deciding compliance issues with the consent decree. What? Is there any issue that wouldn't go to the monitor? There are two situations in which a false claim act can proceed that I can think of. One is if, in the first instance, the monitor found Chase didn't comply. If the monitor said, Chase says it complied, but I disagree. And, in fact, I think Chase. Well, if it didn't comply, I don't have a point. Because we all. I'll get that one. Or if. What is the second? The second situation would be if, after the fact, somebody made an application to the monitor to set aside his original findings on grounds of fraud, and he agreed with that. But then why would you need to file a false claim in that case? To get travel damages and to get penalties. Or money. Yeah. The. Could the settlement agreement have precluded this kind of claim? In other words, you're saying that this kind of claim is inconsistent with the settlement agreement. But there's nothing explicit in the settlement agreement that bars this kind of claim. I think that the settlement bars this kind of collateral attack in two ways. First. Suppose there was evidence. Excuse me. Answer to Judge Conner's question. Okay. So the two ways in which the settlement bars this kind of a collateral attack is Exhibit E. Section C5 and C16 through 18 says the monitor is the one who determines whether Chase Dieter did not comply with the settlement. The plain meaning of the word determine as defined in a series of dictionaries and a series of court definitions. Okay. I got that one. And then the second one. And the second one is that the elaborate fact finding process set up in the settlement tells you it was meant to be the exclusive process. And it could have said. My only point. And this doesn't mean you lose on this argument. But my point is it could have been more explicit. And that's my only point. Judge Silliman had a question. What is your view about the penalty? We think that that is. The counsel says your brief refers only to part of his claim. Your brief in which you set forth the various steps for before a penalty could be imposed, all of which are contingent on various steps. The last being the discretion of the district judge, which can conclude, can conclude an equitable response. But he points out that doesn't, that refers to the servicing but not the crediting. It is true that the settlement uses different language with respect to the servicing metrics and with respect to the consumer elite provisions. As to the servicing metrics, the Hoyt decision is conclusive. And the Seminoe decision of the Fifth Circuit. What about the consumer? What about the consumer relief? As to the consumer relief provisions, we think we can win on that ground as well. The Section J. It's a different theory, right? Well, you go ahead and tell me. Yeah. Yes. So on the first theory, on the Hoyt theory, Section J. of Exhibit E of the settlement makes clear that it is, that penalties under the servicing metrics are dependent on a discretionary decision by the government. On a consumer relief question, those penalty obligations or those payment obligations are not self-executing. There has to be a monitor's finding that Chase fell short. And then the government has the option of either voiding the release or insisting on payment of the money. Just curious. Do you make this argument in your brief? No. We focused on the servicing metrics argument in our brief. But not this? Not, not. Correct. Well, how do we know? Suppose I want to learn independently of your brief, then, as to why the consumer relief obligations fail for the same reason. Where do I find that? That is, that the penalties are contingent. The settlement does not say that Chase's obligation to pay money is self-executing or mandatory. What it says is in Exhibit F, page F12, is if the monitor finds that Chase fell short, the government can then give Chase 30 days' notice to either pay, or if it doesn't pay, the government may void the release. Can I, just to make sure I'm clear, because Judge Tatel's question is important. So on page 48 and 49 and 50 of your brief, you say, I think, why the servicing standard allegations don't qualify as obligations under the False Claims Act, the Hoyt theory. And then on page 50, you turn to the consumer relief. And I guess I couldn't tell from the brief whether this was an additional issue, why the consumer relief would go out, or the Hoyt theory carried over to the consumer relief as well. And I think that's related to Judge Tatel's question. In our brief, our Hoyt argument – You already answered my question. You didn't raise this argument. Right. Our Hoyt argument was focused on the servicing standards. It could apply to the consumer relief. But you didn't make that argument. Correct. Okay. So the consumer relief, though, you have a separate argument for why those would go out. Correct. As to consumer relief provisions, the only well-pled argument in the complaint of how Chase violated the consumer relief provisions is that Chase didn't use an application process to dole out consumer relief. Schneider alleged over and over again, you can only earn consumer relief if you use an application process. But there is no such thing as an application process for consumer relief. The requirements for consumer relief are set out in Exhibit D to the settlement. You can read that from top to bottom. You won't find any requirement to use an application process. Just on road mapping this so I have this straight, on your initial collateral attack argument, if we agree with that, we don't get to these issues that we just discussed. Right. Case is over. If we disagree with that, then we do have to go through the servicing standards and consumer relief. And as to servicing standards, you have Hoyt. As to consumer relief, you have what you just said. Yes. Is that correct? Yes. And then we've got the HAMP. That's very helpful. Yeah. Okay. But can I just, I understood your argument, just to follow up with Judge Kavanaugh's helpful cataloging of these, assuming the Hoyt argument isn't applicable to the consumer relief section. I understood your argument to be that certifications here couldn't be false because the monitor later ratified them. Is that not right? Can I hear that question again? I thought your argument that these couldn't be false because the monitor had later ratified them. Right? Correct. The fact that the monitor is the one who decides the way a judge or arbiter would decide whether Chase complied or not. So it can't be false. Why do you not make the argument that the penalty on the crediting was contingent to? It is clearest with respect to the servicing standards. And we think the same argument could be made as to consumer relief. Why did you not? There's a difference in language between the two. We think the argument could be made, but we thought that the clearest. What is the grounds on which a penalty could be imposed? What is the standard? Who makes the determination whether a penalty should be imposed as to the crediting? I assume the district court judge would make that determination. But after what? What's the process? The process is the monitor finds that Chase falls short on its consumer relief obligations and then exhibit half page F12. If the monitor finds that Chase has fallen short, the government has the right to send a letter to Chase saying, you better pay up or else we can void the release. And then if Chase doesn't pay up, the government has the option of voiding the release of claims that were given in the settlement. On the consumer relief, I thought your main point, and I might be repeating what you've said, but I just want to make sure, is that the terms of the settlement do not require an application. That's exactly what I said. There is no hint of an application process requirement in the consumer relief provisions. There are a few other stray allegations in the complaint of various bad acts that Chase allegedly committed on its Recovery I loans. Those allegations fail for three reasons, if I could just have a couple seconds. Number one, they are not well developed, either in the complaint or in the brief of appellants. They are not tied to any allegation of a specific false claim that avoided the government of money. I'm referring to his name. So his main argument is that Chase didn't earn any consumer relief credit because it didn't use an application process. There are some scattershot allegations of other problems. Those scattershot allegations fail because they're not well developed, they're not well-pled, and they are not tied to a specific false statement that avoided the payment of money. Secondly, there's no allegation that they exceeded the $250 million buffer that Chase has under the consumer relief provisions. The monitor found that Chase overshot by more than $250 million how much consumer relief it had to earn. There's no allegation that any of this stray alleged misconduct added up to more than $250 million. And third, those allegations ignore the question of which loans were actually submitted for credit as opposed to which loans were eligible for credit. As you pointed out, Judge Silberman, if all you're going to do is cross off the debt, there's no need to be in communication with a homeowner. And one of the ways Chase can earn consumer relief, Section D5, is by simply crossing off the debt. Thank you, Judge. Oh, yes. Okay, still on road mapping. These are going to be two different questions. So first question, if we agreed with you on the collateral attack argument, what's left of the HAMP claims? The HAMP claims are independent, and I haven't addressed those, and I would be happy to. Yes, I was going to ask the same question. Just road mapping for now. So we will get to the substance of the HAMP claims. But if we disagree with you on the collateral attack but agree with you on the alternative grounds, on the servicing standards and the consumer relief, and you have different alternative grounds for those two, as we've just discussed, what's left of the HAMP claims? They're still left as well, right? The HAMP claims have nothing to do with the Solomon claims. They're still left. That's what I'm just triple-checking. Okay, now let's talk about the HAMP claims. Yes, Your Honor. There are two grounds on which the district court's order on the HAMP claims should be affirmed. The first is that Schneider hasn't pled any material noncompliance with HAMP. He says that the false claims relating to HAMP consist of two false certificates of compliance that Chase delivered in September of 2010. But HAMP certificates of compliance don't certify perfect compliance with HAMP. They certify material compliance with HAMP. Now, Schneider says that the noncompliance here is that Chase did not solicit certain borrowers whose loans had charged off and moved from the main system of record to the Recovery 1 system of record after the loans charged off. But he never alleges that Chase didn't solicit those borrowers for HAMP loan modifications before their loans charged off and moved from the main system of record to the Recovery 1 system of record. I finally saw. I didn't understand your brief on that point. Now I see it. Yeah, and paragraph 198 of the complaint actually appears to acknowledge that Chase did solicit those borrowers for HAMP loan modifications before the loans charged off. He says in the main system of record, people are solicited, and then it's only after they charge off that there's no more solicitation. The second point is that there are no allegations of any actual My position is it would make absolutely no sense to solicit anything once the loan is charged off. Exactly, because once the loan is charged off, by definition, there will be no foreclosure. A loan only charges off after Chase has made the determination it's not worth it to foreclose on this loan. It would cost more to foreclose than we would realize at the foreclosure sale. That's what Judge Collier said at JA 5 through 7. Third and finally, there are no allegations that the Treasury Department or its agents, Fannie Mae and Freddie Mac, were unaware of exactly how Chase was treating the charged off loans for purposes of the HAMP program. Schneider originally made that argument in his original complaint. He then deleted all such allegations out of his complaint when he amended it, and you can see the disappearance of those allegations at JA 32 Note 2, JA 149, and JA 187. JA 149 and 187 are red lines where you see Schneider redlining out, deleting out all allegations that the Treasury was unaware. I saw that in your brief. What's your third point? That was my third point. The Treasury knew what was happening. There's no allegation that it didn't. For those reasons, Your Honor, we would respectfully ask you to affirm. Okay, thank you. Counsel had no more time left, right? Okay, you can take a minute, Mr. Lai. And I think you had an answer for Judge Silberman also? Yes, I have an answer for Judge Silberman. The requirement to pay the payments for failure to do crediting is found on page D11 of the consent judgment. That's Exhibit D11, and it's 10D, and it says, if the servicer fails to meet the commitment set forth in the consumer relief requirements within three years of the servicer's start date, servicer shall pay an amount equal, shall pay an amount equal to 125 percent of the unmet commitment amount. It doesn't say how that's collected. It just says he shall pay. There's no discretion if he fails to do it. I see. Okay. And so it's an obligation. The requirements to solicit information from the borrower comes from the HAMP, which governs the consent judgment, which governs Exhibit D, the crediting requirements under the HAMP. So you go back to the HAMP, there's a whole series of- Well, I thought your argument in the HAMP was wholly independent. No, no, no, no, no. I'm sorry. It's the HAMP handbook. There's a document- Counsel, let me rephrase my question. My understanding is your argument on HAMP was wholly independent of the consent judgment. The consumer relief under the consent judgment is dictated by Exhibit D. It sets out certain consumer relief provisions. But those consumer relief provisions are governed by the service participation agreement, which incorporates the HAMP requirements and the HAMP handbook. And there's a whole host of requirements that- Wait, I'm sorry. The consumer- Hold on. Just hold on. The consumer relief requirements of the consent agreement incorporate the HAMP handbook? It incorporates the service participation agreement, which incorporates the HAMP. So this consent judgment is- Wait, does that mean that the monitor's responsibility was with respect to the HAMP, too? Not with respect to the HAMP that we allege in the complaint, but the requirements under the HAMP and under the HAMP handbook, yes. Those were some of the guiding principles that he had to follow, and which Chase had to follow, which they ignored. Could you just tell me in, like, two simple sentences why your allegations regarding the consumer relief challenge survives? Just, can you just explain that to me? I say that it's an obligation established by the contract. And there is no provision within the contract that says there is discretion to be given. No, I understand that part of it. Suppose we agree with you about that. His argument is that there's no requirement. Your allegation is they didn't use an application process, and there's no requirement in the decree that they do that. Well, there is an application requirement. Is that your argument? That's contained in the SPA and the HAMP handbook, which govern the consent judgment, which governs Exhibit D. Okay. So you have to be careful. For what? You know, this consent judgment does not exist in a vacuum. It didn't come out of pokeball. It is specifically in the last, we identified it in the last paragraphs of Exhibit D. It says it's governed by the SPA. If you look at the SPA, it provides for False Claims Act enforcement. It provides for a number of different practices necessary to be followed to give consumer relief, to modify loans. And, yes, charged-off loans still had to be modified, and they had to meet the requirements. The government was looking for a benefit out of this, not just the homeowner. The homeowner was a third-party beneficiary, if you will, of the consent judgment. But there was a benefit to the government in terms of righting the wrongs that happened. Explain how that works. I'm still trying to figure that out. Why is this a benefit to the government if the homeowner is relieved completely of any obligation? Because the homeowner has more money to spend, and he can help stimulate the economy. You explain how that works. How does the homeowner spend more money? Well, if he has less debt. He has more money in his pocket than he can spend. If the bank writes off the loan, he has zero debt, and he has more money, right? But in this case, many times Chase didn't inform the homeowner that they had written off the debt. He didn't know that. That's the key to your case, that the homeowner did not know it was written off. Well, it's not the key, but it's part of it. Well, what else is there? Well, what else is there is that Chase— The homeowner is relieved entirely of the debt. Why does that not benefit society as a whole and as well as the homeowner? I'm mystified. Well, Your Honor, if the homeowner is not aware of the fact that his debt has been written off, he still has that obligation outstanding, and he has to consider that in his budget. He can't possibly spend money that—he has to deal with that issue. His credit rating—he has to worry about his credit rating. He can't spend money. He can't spend money to stimulate the economy. Can I ask you one other question? I'm going to read from the red brief and ask for your comment, which is it says there, that entered into national mortgage settlements used an application process in dispensing consumer relief. It goes on to say the monitor nonetheless found that each settling service successfully earned consumer relief credit. Schneider is therefore suggesting that all the parties to the national mortgage settlements have completely misunderstood their own settlements and that none of the servicers that entered into those settlements have ever earned a penny of consumer credit relief. Can you respond to that? I can respond to that by saying that the servicer had to have information from the borrower to determine whether or not the loans that he had given to the borrower qualified for loan modifications and thus for Chase or the other services to receive credits. If all the other services followed the same practices as Chase, they would have committed the same fraud. We do not know that the monitor knew exactly what they were doing. You'll see in our brief we quote part of the monitor's reports, and he talks in terms of loans qualifying for modification and thus for crediting. You can't qualify for a modification unless you have some information from the borrower to determine whether or not those loans qualify. I don't care if it's an application. The answer is if they're right about that, so be it. Everybody else is in violation too. That's right. And I suspect that's true. May I ask one more question? I was going to ask the government one more question. I want to ask Chase one more question. Go ahead. Go ahead. You've got the floor. Okay, Chase is back. What about his argument that the homeowner was injured if you didn't tell the homeowner you'd written off the loan? I don't think that there are well-pled allegations that Chase didn't tell the homeowners when it wrote off the loans for purposes of obtaining credit. There's some generalized allegations that some of the loans in Recovery 1 would not have qualified for credit, but there are no allegations that those are the loans that were ultimately submitted to the monitor with a claim of credit and no allegations that on loans that were in fact submitted for credit, the homeowner wasn't appropriately notified. Okay. And the government? Mr. J. Mr. J. Go ahead. Do you have a question for me? Mm-hmm. Go ahead. On the collateral attack argument, which is distinct from the exhaustion argument, as I understand it, does the government have a position? We do not, Your Honor. Okay. That's it. But if they were right, if Chase were correct about their collateral attack argument, would that eviscerate your argument about that a false claim is separate? I'm sorry, Your Honor. I didn't quite catch the end of your question. In other words, I'm not sure how you can not have an answer to that because, as I understand it, if he's correct about that, that this is a collateral attack, then it doesn't make any difference whether a false claims act is technically not an enforcement action under the decree. I mean, certainly the only issue that we're participating on is the interpretation of that exhaustion provision. I don't understand Chase to have made any argument that, for some structural reason, the fact of the monitor's role and some further role against collateral attack would somehow be determinative of how you would interpret the exhaustion provision. Right. But it's subsumed, I think, as Judge Tatel's point. There wouldn't be an exhaustion. Right. There wouldn't be anything left. There wouldn't be anything left to exhaust. I mean, certainly, I mean, if there was, to put it another way, if the collateral attack argument is correct, then the exhaustion argument was unnecessary. Yeah. Right. You know, I don't want to take a bottom-line view on kind of other ways to dispose of the case. I don't understand, at least based on how they framed their collateral attack argument, I don't understand it to disprove our point, which is just that. Absolutely. Your argument was limited to the exhaustion. That's exactly right. It doesn't disprove it, but it moots it, potentially. You don't have to say yes to that. Thank you, Judge Kavanaugh. Okay, thank you all. Case is submitted.
judges: Tatel, Kavanaugh, Silberman